IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2015

## STATE OF TENNESSEE v. BRENDA HAYNES JACKSON CLAUGHTON

**Direct Appeal from the Circuit Court for Dickson County**
**No. 22CC-2009-CR-250     Suzanne Lockert-Mash, Judge**

_____

**No. M2015-01467-CCA-R3-CD – Filed March 15, 2016**

_____

The appellant, Brenda Haynes Jackson Claughton, pled guilty in the Dickson County Circuit Court to two counts of felony theft and received concurrent, four-year sentences to be served on supervised probation. The trial court also ordered that she pay $36,000 restitution. On appeal, the appellant argues that the trial court abused its discretion by revoking probation for her failure to pay restitution when the evidence shows that she had no ability to pay it. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

William B. (Jake) Lockert, III, Ashland City, Tennessee, for the appellant, Brenda Haynes Jackson Claughton.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Carey J. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In May 2009, the Dickson County Grand Jury indicted the appellant for two counts of theft of property valued $10,000 or more but less than $60,000, a Class C felony. Count one of the indictment alleged that the appellant took approximately

$40,000 from the Estate of Gracie Coates, and count two alleged that she took furniture, jewelry, and a sewing machine from the estate. In October 2009, the appellant pled guilty as charged and received four-year sentences to be served concurrently on supervised probation. The trial court also ordered that she pay $885 in court costs in the amount of $20 per month and scheduled a restitution hearing for February 10, 2010. Although a transcript of the hearing is not in the appellate record, the record reflects that the appellant was ordered to pay $36,000 restitution at a rate of $150 per month. At some point, the appellant's probation supervision was transferred to Florida.

On May 18, 2012, a Tennessee probation officer filed a probation violation report based on the appellant's testing positive for drugs in Florida. According to the report, the appellant tested positive for cannabis on January 10, 2012, and cocaine and marijuana on May 4, 2012. The report also stated that the appellant still owed $36,860 in restitution and court costs and that she had not made a payment since May 17, 2010. The trial court signed a warrant for the appellant's arrest, and she was arrested on June 20, 2012.

The trial court held a probation revocation hearing on July 25, 2012. At the conclusion of the hearing, the trial court found that the appellant had violated probation. The court reinstated probation with credit for time served in the county jail from June 20, 2012 to July 25, 2012, extended probation by two years, and ordered that the appellant pay $5,000 restitution within thirty days of her release from jail. In September 2012, the appellant's probation officer filed a second probation violation report, alleging that the appellant had violated probation by failing to make the $5,000 payment by August 25, 2012.

At the May 27, 2015, probation violation hearing, Julie Dority of the Tennessee Department of Correction testified for the State that she and another officer supervised the appellant's probation. The State noted that the appellant's latest probation violation warrant had been filed in September 2012 and asked Dority "why it took a while to get Ms. Claughton into court[.]" Dority said that she did not know but that the appellant "was on our absconding list. She just disappeared." Dority said that the appellant last reported for probation in July 2012 and that the appellant received a fourteen-day permit to travel to Florida but never returned. The appellant did not pay $5,000 toward her restitution by August 25, 2012.

On cross-examination, Dority acknowledged that the purpose of the appellant's revocation hearing was to address her failure to pay $5,000 by August 25, 2012, not her failure to report to her probation officer. Dority denied that the appellant's file reflected that the appellant's probation supervision had been transferred to Shelbyville, Tennessee, or that the appellant had been in Shelbyville for almost two years. Dority said that she

did not know the appellant's financial circumstances and that "I've had no contact with the defendant."

The appellant testified that after her 2012 probation revocation, she lived in Shelbyville with her youngest daughter, and her probation supervision was transferred to Shelbyville. The appellant could not remember the name of her probation officer but reported to "some woman" for three months until the woman told her that she was "done" and "not to come back." The appellant stated that she currently had custody of her three grandchildren, ages six, seven, and ten, and received a "relative care benefit check" to take care of them. She said she had no other source of income to support the children. The appellant acknowledged that when she agreed to make the $5,000 payment by August 25, 2012, she thought her ex-husband was going to help her pay it. She said, though, that "[h]e's the one that we can't find anywhere." She said she did not "mind making payments towards it" if she knew where, how, and when to make the payments. However, she could not make restitution payments from her monthly benefit check because she needed that income to take care of her grandchildren. She stated that she was "in the process" of trying to receive other government benefits and find a job but that she did not own a home, did not have any money in a savings account or certificate of deposit, and did not have any resources from which to pay $5,000.

On cross-examination, the appellant testified that Florida was her "home state" and that she went "back and forth." At some point, the appellant was in Florida and reported to a probation officer there for more than three years. However, she was extradited back to Tennessee in 2012 for nonpayment of restitution and "stayed here . . . from 2012 for two years after that." The appellant acknowledged that she tested positive for cannabis in Florida in January 2012 but said that she had been "clean and sober now for four years." The appellant stated that she reported to "a small framed, black headed woman" in Shelbyville and that the probation office was in downtown Shelbyville. The appellant said that she had agreed to pay $5,000 restitution by August 25, 2012, "upon the contingency I could access my retirement" and that she could not access her retirement funds because her ex-husband "won't let me have it." She explained, "It was our retirement. He's the one that put the money in for me. I didn't have control over that." She said she would have to hire an attorney to access the retirement account but did not have the money to do so.

On redirect examination, the appellant acknowledged that she did not have the ability to pay $5,000. However, she then immediately stated, "I will pay the five thousand if somebody would tell me what, where, when and how to pay that money." The appellant said that she would pay the money by obtaining employment and that "I would go to work to pay that money back just to have this end." The following exchange then occurred between defense counsel and the appellant.

Q	All right. Today you're charged with violating for not paying the five thousand. I'm trying to establish whether or not you have the ability to pay that. You don't have five thousand to pay?

A	No, sir.

Q	You haven't had five thousand to pay?

A	No, sir.

Q	So this was something you never could pay?

A	No, sir.

Upon being questioned by the trial court, the appellant testified that she did not know she originally was supposed to pay restitution in the amount of $150 per month. After the appellant was placed on probation in October 2009, she lived with her daughter in Rutherford County, Tennessee, and applied for disability. However, at the time of her 2015 revocation hearing, her disability application was "still pending." While the appellant lived with her daughter, the appellant's boyfriend, who lived in Florida, supported the appellant. In 2010, the appellant moved to Florida and served her Tennessee probation sentence there. The appellant lived with her boyfriend, and he continued to support her. In 2012, the appellant was extradited to Tennessee due to her nonpayment of restitution. The appellant said that during her 2012 probation revocation hearing, Judge Burch asked how she could make the $5,000 restitution payment. The appellant told him that "hopefully I would be able to access my retirement." After the 2012 revocation hearing, the appellant was released from jail and lived with her daughter in Shelbyville. At that time, the appellant's boyfriend, who was still in Florida, was sending her $400 or $500 per month to pay rent.

The appellant testified that she had not been employed since having a heart attack in 2008 but that "I want to get a job at the gym, at a restaurant or something else." She stated that her doctor thought she was disabled, but she acknowledged that she had not been deemed disabled by the government since applying for disability six years ago. She said she had a stroke seven months before the revocation hearing, was recovering from breast and hand surgery, and was "just trying to recover and get well." The appellant said that her grandchildren lived with her and her boyfriend in Florida and that she took care of them on a daily basis. She acknowledged that she was healthy enough to take care of the children. The appellant said that the children had been living with her for almost two

years but that she did not receive any child support from the State for their care until she obtained custody of them in January 2015. At that time, the appellant began receiving the "relative care benefit check," and the amount of the check was "[s]even hundred and something dollars a month."

The trial court asked the appellant how she paid for the drugs that resulted in her 2012 probation violation. The appellant said that she did not buy the drugs and that a friend shared the drugs with her. The trial court also asked what steps the appellant had taken to access her retirement fund for the $5,000 restitution payment. The appellant said that she tried to contact her ex-husband by telephone and email and that other people tried to contact him through Facebook. The appellant said that she was entitled to the retirement money as part of her marital dissolution agreement with her ex-husband but that she needed to hire an attorney to get the money. The trial court asked why the appellant had not hired an attorney already, and the victim said, "I'm trying, ma'am." The trial court asked the appellant if she owned any property. The appellant said that she thought she owned fifteen percent of a riverboat company in Savannah, Georgia, and that "I'm trying to find that out now." She said the court was "more than welcome" to put a lien on that property.

On further redirect examination, the appellant testified that she and her boyfriend had been living together "[o]n and off for eighteen years." Although he gave her money while she lived with her daughter in Tennessee, he did not give her enough money to pay her monthly expenses. She said she did not have any money to hire an attorney so that she could access the retirement account or investigate whether she owned property in Savannah and that her ex-husband would not cooperate with her. Defense counsel asked if the appellant's marital dissolution agreement provided that the appellant would have access to the retirement account or any property, and the appellant said no.

On further recross-examination, the appellant testified that her ex-husband inherited the riverboat property from his father and that one of the riverboats was docked in downtown Nashville. Regarding her marital dissolution agreement, she stated, "To my knowledge, I thought it stated that I owned 15 percent of all of it because it was . . . [Belle] Carol . . . which included a lot of things." The trial court asked the appellant what year she was divorced, and the appellant said the agreement "was drawn up in 2004."

At the conclusion of the hearing, the trial court noted that "we're here only on the payment of restitution" and that "another warrant should have been done to have us hear of her failure to report." The trial court stated that it did not find any of the appellant's testimony credible, noting that although the appellant claimed to have been living in Shelbyville, no records supported that claim. The trial court then addressed the appellant's ability to pay restitution, stating that "first of all she claims that she is

disabled, but there has been no proof put before this Court other than her testimony that she is disabled and as I stated I find her not credible at all." The court noted that the appellant was physically able to look after her grandchildren and found that "she just chooses not to [work]." The trial court described the appellant's claim that she had not attempted to obtain the property that was owed to her as "incredulous" and stated that "[i]f she had done that she could have paid that off probably in one [fell] swoop." The trial court stated that it did not find that the appellant did not have the ability to pay restitution, found her to be in violation of probation, and revoked probation. Defense counsel asked that the court make a specific finding regarding the appellant's ability to pay $5,000 by August 25, 2012, and the trial court stated, "I will find that she does not have a disability and that she had the ability to pay within the time frame of the last order - whatever the last order said."

## II. Analysis

The appellant contends that the trial court erred by revoking her probation for her failure to pay restitution in the amount of $5,000 by August 25, 2012, because she did not have the ability to pay it. The appellant contends that "[i]t is clear that [she] was raising three children and never had the ability to pay the five thousand dollars within 30 days of her release in July 2012." The State argues that the trial court properly revoked probation. We agree with the State.

Upon finding by a preponderance of the evidence that the appellant has violated the terms of probation, a trial court is authorized to order an appellant to serve the balance of the original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); see State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013) (concluding that abuse of discretion with a presumption of reasonableness is the appropriate standard of appellate review for all sentencing decisions). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

When the trial court's basis for revoking probation is failure to pay restitution, the court must "articulate a finding that [the] defendant had neglected or willfully refused to pay." State v. Dye, 715 S.W.2d 36, 41 (Tenn. 1986). If the violation is due to willful refusal to pay or failure to make bona fide efforts to obtain the means to pay, then the trial court may revoke the probationary sentence and order the defendant's incarceration. Id. If the violation stems instead from the probationer's inability to pay, it may not form

the basis for incarceration unless alternative measures other than incarceration are inadequate to meet the State's need for punishment and deterrence. Id.

Here, the trial court concluded that the appellant had the ability to pay $5,000 by August 25, 2012, and that she failed to do so. Thus, the court found that the appellant's failure to pay restitution was willful. We note that the appellant did not include the transcript of the 2012 probation revocation hearing in the appellate record. However, she indicated at the 2015 revocation hearing that the presiding judge at the previous hearing had questioned her ability to pay $5,000 within thirty days and that she told the judge she could obtain the money from her retirement account. Although the appellant then claimed at the 2015 revocation hearing that she could not access the money, the trial court found that she had made no bona fide efforts to do so. Moreover, although the appellant now contends that she could not pay restitution because she was raising three grandchildren, nothing indicates that she was raising those children from July 25 to August 25, 2012. To the contrary, the appellant testified at the 2015 revocation hearing that the children had been living with her for just two years. Finally, the appellant claimed at the 2015 hearing that she was disabled but presented no proof of disability, and the trial court found that she chose not to work. We conclude that the evidence does not preponderate against the findings of the trial court and, therefore, find no abuse of discretion by the court's revoking the appellant's probation and ordering that she serve her sentences in confinement.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE